## S. P. Noland *v.* The State.

1. Continuance.—In an application for a continuance the cause assigned was the absence of a witness named Robert Zilsdorf, who had been attached at the instance of the accused, and the overruling of the application is a cause relied on in the motion for a new trial. But the transcript shows, that a "Mr. Zilsdorf," who had been attached as a witness for the accused was present and testified in his behalf at the trial. This court presumes that this testifying witness was Robert Zilsdorf, and that the refusal of the continuance is inadvertently complained of.

2. Change of Venue. — Applications for change of venue on account of local prejudice must, under the law, be confided to the discretion of the presiding judge to whom they are addressed, and the exercise of his discretion, though subject to revision on appeal, will not be interfered with unless it be apparent that his discretion has been abused or arbitrarily exercised, to the prejudice of the accused.

3. Charge of the Court.—It is well settled that in felony cases the jury must be instructed upon the law applicable to every legitimate view they may take of the evidence; but this is the extent of the requirement of the law in this respect.

Appeal from the Criminal District Court of the county of Harris.   Tried below before the Hon. G. Cook.

The indictment charged the appellant with the murder of Joseph Shannon, by shooting him with a pistol, on January 30, 1877.

Shannon and the appellant, it appears, were competing traders in the hide business at Houston, and this homicide seems to have resulted from the state of feeling aroused by their competition.   On January 30, 1877, a farmer named

Henry Huffman brought to market there a parcel of hides and some cotton. After bargaining the hides to Shannon, the appellant came up and offered a better price for them, and Huffman sold them to him, and carried them down to his warehouse.

According to Huffman's testimony, the appellant stepped up to a desk and took out of it a six-shooter, and then went off, saying something about not standing that any longer. When appellant came back, Shannon came along behind him. Shannon came in the door some five or six steps behind appellant, who, as the former entered, turned, and told him not to come in there, and to get out, and about the same time fired at him with his pistol. Shannon asked the appellant what he was shooting at him for, and the latter fingered his pistol as though preparing to shoot again. Witness was trying just then to get out of the door, and Shannon seized him round the neck and held on to him, pushing witness along, so as to keep from being shot again. Appellant put up his pistol and went out the back way, and Shannon went out the front way, spitting blood, and with his shirt bloody on the left side. He walked, and tried to get along, but got down on his knees and then on his face, when some men came along and helped him into a harness-shop close by, where he died in ten or fifteen minutes.

According to this witness, Shannon stopped when the appellant told him not to come in, and nothing further passed between them before the appellant fired. Shannon had on no coat, and no weapons were found upon him.

A number of other witnesses for the state saw parts of the affair, and differed from Huffman in some circumstances of no apparent importance.

For the defense A. Hidingsfelder testified that he was in front of the house and saw Shannon and the appellant as they came along together, walking pretty fast. They went in the house, the appellant foremost, and witness heard the

words "get out of here," and then heard the shot. From where he stood he could not see Shannon, but just as the shot was fired he saw a chair roll towards the appellant from the direction where Shannon was.

Zilsdorf, for the defense, testified that in the early part of January, 1877, Shannon told him he would run the appellant out of the hide business in Houston, and showed witness a pistol which he said would do it. Witness told the appellant what Shannon had said, but did not remember any reply made by the appellant.

Several other witnesses for the defense testified to the same general effect as those just noticed; but nothing in the rulings of this court calls for a particular detail of the evidence.

The verdict was murder in the second degree, and assessing the punishment at fifteen years of the penitentiary.

No brief for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

Winkler, J. The appellant was indicted and tried in the Criminal District Court of the county of Harris, for the murder of one Joseph Shannon, alleged to have been committed on January 13, 1877. On the trial the accused was convicted of murder in the second degree, and his punishment was assessed by the jury at confinement in the state penitentiary for a period of fifteen years. A motion for a new trial was made in behalf of the accused, which was overruled, and judgment entered upon the verdict of the jury from which this appeal is prosecuted.

Before the trial commenced, an application was made, on behalf of the accused, for a change of venue, upon the alleged ground that there existed against the accused, in Har-

ris County, where the prosecution was pending, so great a prejudice that he could not obtain a fair and impartial trial in that county. This application was sworn to by the accused, and was supported by the affidavits of eight other persons. Upon inquiry into the facts in relation to the motion, the judge overruled the application for a change of venue; to which ruling of the court the accused took a bill of exceptions.

The grounds set out in the motion for a new trial are the following:

" 1. The court erred in overruling defendant's motion for a continuance.

" 2. The court erred in refusing the defendant's application for a change of venue.

" 3. The court erred in failing to charge the jury upon the law of manslaughter.

" 4. The verdict of the jury is contrary to law.

" 5. The verdict of the jury is contrary to both the law and the evidence, and is not supported by the evidence."

To the action of the court overruling the motion for a new trial the accused also saved a bill of exceptions.

There is no assignment of errors, and there are no bills of exceptions, other than the two above mentioned, set out in the record, to wit: First, to the refusal to grant a change of venue; and, second, to the refusal of the court to grant a new trial. No exception was taken to the charge given to the jury, nor were any special instructions asked by either party.

The matters to be considered arise upon the motion for a new trial, which embraces all the propositions embraced in the two bills of exception set out as above stated. These several propositions will be considered, so far as deemed necessary, in the order set out in the motion for new trial.

1. Did the court err in overruling the defendant's motion for a continuance?

The record discloses that prior to the time of making this application the accused had, at three previous terms of the court, procured continuances on account of the absence of witnesses. This last application was asked on account of the absence of a witness named Robert Zilsdorf, for whom, it is stated in the affidavit of the accused for a continuance, an attachment had been issued and served upon the witness. An attachment for this witness, to testify in behalf of the defendant, is set out in the transcript, dated January 3, 1878, upon which is the following return: " Returned executed. [Signed] C. M. Noble, Shff. H. C."

The statement of facts in the transcript shows that a " Mr. Zilsdorf," a witness for the defendant, testified on the trial. The Christian name of the witness Zilsdorf is not given in the statement of facts ; but, in the absence of anything to show the contrary, we must presume that the Robert Zilsdorf mentioned in the affidavit for a continuance, and for whom an attachment had issued, and been returned *executed*, and the " Mr. Zilsdorf" mentioned in the statement of facts are one and the same person, and that the witness on account of whose absence a continuance was asked was brought into court by the sheriff by attachment, and testified in the case ; and, hence, we hold that the cause of continuance fell to the ground; that the court did not err in refusing to continue the case ; and that this cause was unwarranted in the motion for a new trial, and may have been inadvertently inserted.

2. Did the court err in refusing a change of venue? In passing upon the motion, the presiding judge caused a number of persons to be examined, under oath, before the court, touching the grounds set out in the motion, to wit, whether there existed so great a prejudice in Harris County against the accused as to prevent him from obtaining a fair and impartial trial in the county or not ; and a statement of the facts sworn to on this examination was made up by

the attorneys and certified by the judge, and is embodied in the record. Among the persons examined were the eight compurgators of the accused in his motion for a change of venue, and four others, including the sheriff of the county.

Without undertaking to set out the statements of the different persons who were so examined, we are of opinion that the examination failed to disclose the fact that there existed at the time, in Harris County, such prejudice against the accused as that a fair and impartial trial of his case could not be had in the county. In fact, it is almost incredible to suppose that in a county having, agreeably to the sworn statement of the sheriff, *about 5,000 jurors*, so great a prejudice should exist against any one individual as to render it at all probable that he could not obtain a fair and impartial trial. Still, if such were shown to be the fact, a change of venue should not be withheld. Applications of this character must of necessity be confided, under the law, to the discretion of the judge who presides at the trial, and, unless it should be made to appear that this discretion had been abused, or arbitrarily exercised, and to the prejudice of the accused, or so as to deprive him of some legal right, this court would not be warranted in interfering with his action. Still, such action is subject to revision on appeal. In the present instance we find no error in the ruling of the court below in refusing a change of venue.

The third ground complained of in the motion for a new trial is that the court erred in failing to charge the jury on the law of manslaughter. It is settled practice that the judge who presides at the trial of a felony is required to give to the jury such instructions upon the law of the case as will enable the jury to apply the law to every legitimate view they may take of the case as developed by the testimony. This the law requires, and with nothing short of this will its demands be satisfied. But, when this demand of the law is met by the judge, nothing further is required.

Viewing the charge in the present case in the light of the evidence as set out in the statement of facts, we are of opinion the demands of the law upon the judge have been fully complied with. The charge upon murder of the first and second degrees, and homicide in self-defense, including the presumption of innocence and the reasonable doubt as to the general subject as well as between the different degrees, and as to express and implied malice, was a clear, able, and impartial enunciation of the law of the case as made by the proofs. There was nothing developed by the testimony requiring a charge on the law of manslaughter, and there was no error in the failure to so charge.

The remaining grounds set out in the motion for a new trial relate to the sufficiency of the evidence to support the verdict and judgment, and may be considered together. A careful consideration of the testimony as set out in the record fails to discover any want of legal evidence to support the conviction; and we find no error in the refusal of the court to grant a new trial on these, or, in fact, on any of the grounds set out in the motion for a new trial.

In this case, which is not by any means an isolated one, we have not been favored with either written brief or oral argument in behalf of the appellant, which is always a source of regret to the court. In all such cases we have deemed it our duty to examine the record, and all it contains, with even greater care, if possible, than in those cases where able counsel have appeared who would not fail to call attention to every question involved in the appeal, in order to ascertain whether the law has been properly applied in the given case. In the present case, not only all the propositions involved in the bill of exceptions taken on the trial below, and complained of in the motion for a new trial, but the whole record, has been examined with all the care the liberty of the appellant and the importance of the case demand at our hands; and from such examination we are of

opinion that the appellant has been fairly tried upon a valid indictment; that he has been fairly convicted by the jury upon a sufficiency of legal evidence, under proper instructions as to the law of the case; and that, upon a review of the proceedings on a motion for a new trial, no sufficient cause was found for setting aside the verdict, and without discovering anything which would warrant this court in reversing the judgment rendered in the court below. The judgment rendered herein is affirmed.

*Affirmed.*